# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL WITHERSPOON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No.  06 C 7089 |
| | ) | Judge Ronald A. Guzmán |
| CITY OF WAUKEGAN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Michael Witherspoon sued the City of Waukegan for race discrimination and retaliation in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* A jury returned a verdict in favor of defendant on Witherspoon's discrimination claim and in favor of Witherspoon on his retaliation claim and awarded him $10,000.00 in compensatory damages. Before the Court is plaintiff's request for equitable relief. When plaintiff seeks both legal and equitable relief, "the Seventh Amendment right to a jury trial requires that the legal claims be tried first, to a jury." *Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.,* 585 F.2d 821, 844 (7th Cir. 1978) (citing *Beacon Theatres v. Westover,* 359 U.S. 500 (1959)).

> After a trial on the legal issues, any issues necessarily and actually decided by the jury are foreclosed under settled principles of collateral estoppel from subsequent reconsideration by the district court. The court may not make findings "contrary to or inconsistent with the jury's resolution  . . . of that same issue as implicitly reflected in its general verdict . . . on the damages claim.

*Id.* (quotation and alterations omitted). In deciding whether equitable relief is appropriate the Court may make its own factual findings as long as they are not inconsistent with the jury verdict.  *Miles v. State of Indiana*, 387 F.3d 591, 599 (7th Cir. 2004).

The jury found defendant retaliated against plaintiff in one or more of the following ways:

-sending Plaintiff home on August 17, 2005;
-assigning Plaintiff menial tasks;
-making Plaintiff wear a uniform;
-requiring Plaintiff to obtain a commercial driver's license ("CDL")

But defendant argues that these retaliation charges do not form the basis for an award of back pay or front pay. While the jury was certainly entitled to infer that assigning plaintiff menial tasks and/or requiring him to wear a uniform was no more than harassment imposed purely as retaliation for his complaint of discrimination, such retaliatory acts did not result in a demotion or a change in hours worked or in any other loss of income or even income-producing opportunities. Looked at in the light most favorable to the plaintiff, there is no evidence sufficient to warrant an inference that wearing a uniform or doing menial tasks caused plaintiff to suffer economic injury. *Taylor v. Phillips Indus.*, 593 F.2d 783, 786 (7th Cir. 1979). Thus, while plaintiff is certainly entitled to compensatory damages for any such retaliatory acts, there is no basis for imposing back pay or front pay awards. A monetary award for lost income is not needed to place plaintiff in the same position he would be in if he had not been required to wear a uniform or do menial tasks. The injury resulting from such treatment is the emotional pain and suffering for which compensatory damages have already been awarded.

The same conclusion applies to the belated imposition of a CDL requirement on plaintiff. On August 12, 2005, plaintiff received a memorandum from Johnston stating that he was required to obtain a CDL by September 13, 2005. (Trial Tr. vol. 1, 66-68, June 22, 2010.) Although defendants testified that Maintenance Worker I employees were required to have a

CDL, plaintiff testified that when he was hired no one ever asked him if he had one or told him that he was required to get one. That the jury would credit such testimony is not surprising as he had been working for five years without a CDL before he was told that he was required to obtain one and given only thirty days to do so. (*Id.*) Plaintiff also testified that he thought it would take six months to obtain a CDL, and that he did not think it was possible to obtain it in a month. (Trial Tr., vol. 2, 158, 161.) In an attempt to rebut any inference of retaliation, Matson testified that he discovered plaintiff did not have a CDL only because he reviewed plaintiff's grievance shortly after making a list of employees with CDLs to be randomly drug tested as required by the U.S. Department of Transportation and noticing that plaintiff's name was not on it. (Trial Tr., vol. 3, 456, June 24, 2010.) Given that it took defendant five years to discover that plaintiff lacked this "qualification" for the position he held, and that he was then given only thirty days to cure the deficiency, the jury could clearly have rejected Matson's explanation and found that the CDL requirement was imposed as retaliation.

Even if the jury rejected Matson's testimony on this point in its entirety, however, it does not follow that there is a link between the CDL requirement and any loss of income. While plaintiff arguably lost earnings as a result of being sent home on August 17, 2005, the CDL requirement was not mentioned during the interaction that culminated in that action. Furthermore, the timing of events suggests that there is no relationship between the two. Defendant told plaintiff on August 15, 2007 that he had thirty days to obtain a CDL. Why then, only two days later, would defendant send plaintiff home because he did not have a CDL? This just doesn't make sense. Nor is there any other evidence of any action taken against the defendant that resulted in any pecuniary loss to him for his failure to possess or obtain a CDL

even after the September 13, 2005 deadline.

Plaintiff is left with only one possible basis for establishing pecuniary loss due to defendant's retaliatory acts, the defendant's actions in sending him home on August 17, 2005. On August 16, 2005, plaintiff came to work from a doctor's appointment with a physician's note. (Trial Tr., vol. 2, 70, June 22, 2010.) The note stated: "May return to work with restrictions no aggressive squatting, running, or standing. May perform light work. No lifting over 20 lbs." (Joint Trial Ex. 10, Physician's Note, August 16, 2005.) Plaintiff testified that he gave the note to his "work center supervisor," whom he saw discuss the note with Larry Matson, and then went back to work. (Trial Tr., vol. 1, 70, June 22, 2010.) Plaintiff returned to work on August 17, 2005 with a knee brace and the same physician's note. (*Id.* 71.) After seeing the note, Larry Matson told plaintiff to go home without an explanation. (*Id.*) However, on September 20, 2005, plaintiff received a letter from the City of Waukegan explaining that plaintiff's department at the City of Waukegan did not have light-duty positions or a light-duty policy, and that the department looked forward to his return once he recovered. (Trial Tr., vol. 2, 82.) A month later, on October 25, 2005, plaintiff filed a second charge with the EEOC alleging that defendant retaliated against him in violation of Title VII when he was told to obtain a CDL within a month's time and when he was sent home without explanation on August 17, 2005. (*Id.* 88.)

The evidence does not justify a finding that plaintiff was sent home on August 17, 2005 in retaliation for his complaints of discrimination. Plaintiff's theory is that he was sent home on August 17, 2005 because he wore a knee brace to work, while employees who had not

complained of discrimination were allowed to work with braces. But the evidence shows that plaintiff was sent home on that date because the restrictions in his doctor's notes were such that he could not, in conformance with those restrictions, perform the ordinary duties of his job as a Maintenance Worker 1 and defendant had no light duty jobs for people with work restrictions. Human Resources Director Katherine Schwarz testified that there were numerous employees who worked with medical braces similar to plaintiff's brace. As long as they were allowed and able to do their work without restrictions, the braces were of no concern. However, there were none working with medical restrictions because the public works department had no light duty jobs available. (Trial Tr., vol. 3, 368-69, 379-80, June 24, 2010.) The plaintiff himself testified he was allowed to work for a month while wearing the knee brace. Larry Matson testified that it was the policy of the department that there was no light duty work. He also testified that he himself was not allowed light duty work after being placed on medical restrictions on several occasions during his employment with the Human Resources Department. Thus the evidence establishes that defendant's actions were in conformance to a policy and not in retaliation for plaintiff's protected conduct.

On October 10, 2007, plaintiff was terminated from his employment. Prior to that, plaintiff never advised the defendant that his medical restrictions had been lifted and he could return to work without restrictions. On the contrary, sometime in September or October 2007, plaintiff informed defendant that his restrictions were permanent. The Court finds the evidence does not support a finding that the defendant sent plaintiff home on August 17, 2005 as retaliation for his complaints of discrimination.

For the reasons given above, the Court finds for the defendant and against the plaintiff on the plaintiff's demand for equitable relief.

Dated: August 22, 2012

**SO ORDERED**　　　　　　　　　　**ENTER: August 22, 2012**

　　　　　　　　　　　　　　　　　　*Ronald A. Guzmán*
　　　　　　　　　　　　　　　　　　-------------------------------------------
　　　　　　　　　　　　　　　　　　**RONALD A. GUZMÁN**
　　　　　　　　　　　　　　　　　　**District Judge**

.